Mr. Dujanskis, you may remove your mask if you wish while you're arguing. Thank you, Your Honor. You may proceed. Good morning, and may it please the Court. On behalf of Mr. Hayes, I do want to thank the Court for this opportunity to present his appeal. I will focus my argument today on three points. First, I will discuss how the Veterans Court's definition of exposure is legally erroneous. Second, I will explain why the law prohibits the Board from acting as its own expert witness and instead requires the Board to rely upon competent expert evidence when analyzing scientific information. Finally, I will discuss why the duty to assist requires the Board to obtain the entire report at issue here. First, I would like to highlight just a couple pertinent facts. The government does acknowledge that herbicides that were last used in the Korean DMZ in December of 1969, the VA accepts through its regulations that herbicides can remain in the environment because they extended the time period for presumptive exposure until August of 1971. Is your entire exposure theory, I get it that it's based on residuals, but is it just that it was within six weeks of the cutoff? No, Your Honor. The premise of the argument is that Mr. Hayes presented evidence that the half-life of the herbicides exist and remain in the environment up to at least nine years after the last use. Half of the herbicides would have been dissipated, but still at least half, we think, remained in the environment. The problem is that the Veterans Court's definition that they relied upon to deny his claim and find that he was not exposed required direct contact or handling of the herbicides. My concern is that Congress did make a decision based on the belief that residuals could exist, and they set a deadline. And it just feels like you're just asking us to extend that congressionally imposed deadline. Not at all, Your Honor. What we're asking is that in case-specific situations that experts review the evidence, review the situation, and determine based on the characteristics of the chemical and the particulars of that veteran's service whether exposure could or did happen. I'm having the same problem that Judge O'Malley is having. It seems to me that your evidence in this case was solely limited to the fact that he was in the DMZ and the DMZ was sprayed, which is exactly the same sort of evidence that leads to the presumption. And if there was something more here, perhaps you would have proved actual causation. But I'm wondering how it is that the same evidence that leads to the presumption can also lead to a conclusion of actual exposure. Your Honor, I would just ask that you consider a similar situation with radiation-exposed veterans where there are presumptions that certain activities expose veterans to radiation, but the regulation also recognizes, and I'm looking at 38 CFR 3.311, that in some instances the amount of radiation that they could have been exposed to would entitle them to the benefit of becoming a radiation-exposed veteran. And so I don't know that... We're not asking the court certainly to expand the presumptive period even by six weeks, not even a day. All we're asking is that in this situation Mr. Hayes presented evidence that some residual... But it's the same evidence that would support the presumption. There's nothing additional, right? I mean, for example, if he had come in and said, I served in this town, this was sprayed three months before I went there, the residuals would still be there, I walked around the town. Sure, that would be different. But the problem I'm having is he didn't say anything like that. He just said, I served in the DMZ, the DMZ was sprayed. That's the same thing that leads to the presumption. Yes, in large degree it is, Your Honor. But again, I think in this situation certainly some of the facts of his particulars are not in the record. That's the problem. Yes, Your Honor. But our problem with the Veterans Court's decision is how they determined exposure was not proven by requiring handling or direct contact. And we just don't think that the law... But how are we to say that that is harmful even if we disagree with that definition when there was no evidence? I mean, your only evidence was a study from Missouri over a four-year period in the 80s that the Veterans Court found had no connection to his actual time or location of service. So the problem is that there was just no evidence other than, as Judge Dyke says, what would lead to the presumption. Yes, Your Honor. I think that that's more or less correct. But again, I think that our biggest problem is just how the Veterans Court defined exposure to be limited to contact or handling. And certainly by the way that the VA and Congress has allowed exposure to occur after the use in the Vietnam case, obviously there was much more use for years, that kind of definition for exposure is simply not in accordance with the law. I would like to point out, though, that even aside from the erroneous definition of exposure, the other two errors that the Board committed and that the Veterans Court affirmed would provide relief to Mr. Hayes. And here the Board mistreated this evidence by acting as its own expert. And in doing so, it determined that Mr. Hayes was not exposed to the herbicides. The Board further erred by failing to recognize the VA's legal obligation to obtain the entire report. And instead of enforcing the Board's legal obligations, the Veterans Court condoned the Board's erroneous treatment and did so by allowing the Board to act as its own expert. But just like the Board is not competent to make findings that require medical training and knowledge, the Board is not competent to make findings that require training and knowledge in chemicals and environmental science. And for this reason, we ask that the Court endorse and expand the holding in Colvin v. Derwinski and find that the Board may not act as its own expert witness in any field, not just medical. I'm having a hard time understanding how they did that when their conclusion was that there was just no evidence. And you keep saying that they required direct handling, but they even said, or anything that would suggest that he came into direct contact, such as being there when it was being sprayed. But that was just an example. And then they went on to say that the only evidence was his location. Right, Your Honor. And that is evidence enough. Rather, that is sufficient to prove exposure. And we rely on the facts that both Congress and the Secretary have expanded the time period after the last use, not when it was handled, not when it was sprayed, but when the residuals remained in the environment to allow exposure to exist. We've had plenty of cases where we've said, even after the period, the fact of residuals is a fact that can be relied upon, but it's not enough. I mean, it's one thing that is part of the entirety of the evidentiary consideration, but we've said it can't be the only consideration. And what distinguishes this case, Your Honor, I think, from those cases, is that Mr. Hayes presented scientific evidence, and it was an excerpt, and it was incomplete, which is part of our argument here today, but it was additional evidence that spoke directly to the amount of chemicals that existed in the environment after exposure. And in the cases that I'm familiar with, and I'm not familiar with any to date that have relied specifically on evidence such as this, it was the mere fact that there were residuals, I would agree, is probably not enough. But when we combine that with scientific evidence that tends to explain or describe to the Board how much actual chemical remained, then I think that that distinguishes it and requires the Board to, one, obtain the entire report, figure out, because they did make a finding that it was incomplete and there was some missing information from the excerpt, and then to submit it to an expert to explain to the Board what does this all mean. What does this mean for Mr. Hayes when he was in the DMZ? How much exposure could he have experienced? How much chemicals remained in the environment? And was it enough to where we can be satisfied that he was or was not exposed? And that's not what happened here. Instead, the Board, acting again as its own expert, determined that this just didn't say anything. It didn't prove anything. One, because it was incomplete, and we acknowledge that, but the duty to assist then should have been triggered at that point to obtain the entire report. And then also the Board, again, acting as an expert, determined that it just didn't give any information that was useful in their findings of fact. And a point to, again, Moore v. Shinseki as controlling here, just as in Moore where the records were not obtained and the VA argued that they didn't have any obligation to look at them because they weren't relevant, this court very clearly held that until they actually reviewed the disputed records, they could not know what information was contained in them. And we argue that the excerpt provided sufficient information to at least trigger the duty to get all of those records and determine what was in it and whether or not it was pertinent and helpful to Mr. Hayes' claim. The Secretary does argue that the records in Moore were claimant-specific, but I think that that is distinguishing and it overlooks the nature of the records in this case. The issue in Moore was a medical issue, so naturally the records would have been specific to the claimant and his medical situation. In this case, the primary issue is scientific in nature, so the records are potentially relevant because they contain information that speaks to the heart of the matter, which is, again, whether herbicides that have a half-life of at least nine years were present in the environment at the same time as Mr. Hayes. And I do want to emphasize again that this error is independent of any error the Veterans Court did or didn't make with regard to their definition of exposure. This is so because neither the Board nor the Veterans Court can adequately determine whether Mr. Hayes was exposed to herbicides until they obtain the entire HHS report and make such a finding. And this should, again, be based upon competent expert evidence that considers the report. So in sum, Mr. Hayes asked this Court to find that the Veterans Court legally erred in allowing the Board to act as its own expert, where the Board is not competent to provide such expert evidence, and we also asked the Court to rule that because the entire HHS report contains information that speaks to the question of whether herbicides were present in the DMZ when Mr. Hayes was there, the Veterans Court also erred in finding that VA had no obligation to obtain the entire report. Okay. Thank you. We'll hear from the government. We'll save you rebuttal time. Thank you, Your Honor. Mr. Yale. May it please the Court. The heart of this appeal is a straightforward factual issue, whether or not Mr. Hayes came forth with... I think it's a legal issue. And one question is whether the Board's definition of exposure, I mean, the Veterans Court definition of exposure is too narrow. And it is too narrow, isn't it? I mean, you wouldn't have to show that you were actually present when it was being sprayed in the hypothetical I gave earlier where someone said it was sprayed three days before I went to this particular town and I walked around the town. That would perhaps be sufficient evidence to show exposure, even though it wouldn't lead to the presumption. So, I mean, the definition is kind of restrictive, isn't it? With all due respect, Your Honor, I don't think that the definition was coming forth with a specific bar to any other evidence other than what was cataloged here. So they gave particular examples of how you can demonstrate actual exposure to herbicides, but they didn't say these are the only ways that you can do it. And so if, for example, Mr. Hayes came forth in the record with indications or evidence that, for example, he served in a unit that was constructing something and was digging in the soil and there was evidence that there had been herbicides buried there at some point in time. I mean, that's direct evidence that you can point to that shows exposure to herbicides. But all we have here. So someone in that situation could recover even though he wouldn't benefit from the presumption. They can't benefit from the presumption because their service is outside the period. Correct. And they're not within the unit that the DOD has determined. But that kind of evidence would be sufficient. That kind of evidence would be sufficient. But the Veterans Court fairly read that the Veterans Court opinion cannot really be fairly read as restricting it to just, you know, those very, very specific evidence, those examples. But those are examples that, you know, the Veterans Court has been the board has been faced with, the Veterans Court has been faced with. And so, for example, you know, if just as I was saying before, if there's a factual situation where the Veteran can demonstrate that, then you can establish exposure for direct connection. But here, essentially, all that Mr. Hayes is pointing to is the same evidence that, you know, the DOD put forth and the VA considered in the DMZ regulation. And based upon that, they established this presumption. So would you agree with my statement before that the fact of residuals, the very fact that Congress relied upon in terms of setting the presumption, that the fact of residuals remains relevant even after the presumptive period? Well, I mean, it would be relevant and something to consider, but it doesn't get you where you need to go, at least upon this particular record. You know, we think it would be, yes, relevant, but not sufficient. And part of that is because, you know, under Title VIII, I mean, you have to look at the Veterans, the facts and circumstances of the Veterans service. And here, just saying that there were herbicides sprayed in the DMZ, and then I, you know, as the Veteran was there afterwards, that's essentially bringing in every Veteran who served in that, in Korea, really, in that period of time after the presumption. There's nothing, there's nothing differentiating his service from anything else. And Congress has already provided the, you know, the VA with the ability to craft the regulation. And now with, you know, more recently with sort of the actual DMZ statute, I mean, they've set the period where they've determined that actual exposure has taken place. So is it your position that what the Veterans Court was doing, and maybe its language was a little looser than it should have been, but was setting out examples of things that would be sufficient, but they weren't saying that all of those things are necessary? Correct. That's exactly what we're saying. And, you know, there could be a situation if the Veterans Court come forth with a rule of law that said, for example, residual exposure under no circumstances. There could be no factual situation where a Veteran can come forth with evidence to demonstrate actual exposure. You know, some rule of law such as that, maybe at that point, you know, that's something that this court can review and is something that could possibly be a reverse layer. But that's not what they were doing here. They're just looking at this record and saying it's barren. It's barren of any evidence of actual exposure. And the Veterans Court is actually correct that what essentially is going on here is trying to expand the presumption because the fact that there's just a barren record here. So it's certainly not foreclosing. In a different case, on different evidence, the Veteran coming forth with evidence that could establish based upon service in Korea after the presumptive period that, you know, you could establish a direct service connection. Can you think of anything other than your example of digging for construction or for burial or something other than digging in the soil? Can you think of any other example of what a Veteran could show after the presumptive period? Well, if you put it into context, and as it was mentioned in the regulation when it was actually crafted, I mean, the spraying here was in a relatively narrow area. You know, I think they said it was essentially 350 yards across and essentially, you know, sort of to the south of the DMZ. And if, for example, the unit records show that, you know, they were doing, the Veteran was, you know, was serving right where there's evidence that spraying was taking place or something like that. But there's really no evidence even here. I mean, even sort of setting aside all of this, and it wasn't, you know, it wasn't really material to the boards or the Veterans Court's decision, the record here is saying that the Veteran served in Daegu, which is, you know, I mean, that's hundreds of miles from the DMZ. And so maybe what the Veteran is saying is they took trips or something closer into the DMZ. But there's just no evidence of anything in terms of his service in Korea that would show actual exposure. And just one point on sort of this study. First of all, that's a, you know, it was determined not to be relevant. So that's something the court cannot review. But even, you know, in the... I'm not sure that's true. I mean, the question of relevancy is a legal question as well as a factual question. Well, but here it's relevance as determined by applying the duty to assist and whether or not the records need to be obtained. But even setting aside and even assuming for purposes of this that there is jurisdiction. Here on page four of the reply brief, it's... Mr. Hayes indicates that they actually have the study. You know, the language here says Mr. Hayes provided that report's cover page and its above quoted page to VA excerpting just those two of the report's 721 pages essentially for the duration of the study. To the VA's convenience. So looking at that in the reply brief, it seems like Mr. Hayes already has this report. It's already been determined to be relevant just based upon, you know, what was excerpt. But how does the duty to assist kick in here to have the VA obtain this report that the veteran already has? It's already determined to be not relevant in that, I mean, there's clearly no reversible error based upon that given the fact that it's about, you know, it's one page about Missouri and whatnot. It's not specific at all to Korea or the service there. But we just think that there can't be any reversible error when it seems that they actually even have the report here. And so in front of the board, when the board said that this report was incomplete, Mr. Hayes could have provided the entire report or could have provided it to the Veterans Court to point to what, if there's anything in there that could possibly point to Korea and his service and actual exposure in Korea, then that could have been identified. And so if there's nothing further, we ask that the court either dismiss for lack of jurisdiction or affirm the decision of the Veterans Court. Okay. Thank you, Mr. Yale. Mr. Delhagas. Thank you, Your Honor. So I want to start just by reading precisely what the Veterans Court ruled. Nowhere does the, and I'm looking at appendix page four, nowhere does the record indicate that the veteran directly handled any herbicides, nor does the record suggest that the veteran could have come into direct contact with herbicides. And then they give an example such as being present while nearby or being sprayed or transported. There's no way, and we would assert that there's no way that this can be read as allowing exposure outside of direct handling or direct contact. The examples are examples that are consistent with direct contact. The Veterans Court did not say exposure such as direct handling. They said he did not directly handle it or come into direct contact. And that is really the problem that we have with their ruling. The fact of residuals, I'm sorry, the Secretary has seemed to be rejecting, although he stepped back a bit from that, that every veteran in Korea is unable to prove exposure just because there were residuals. And I would just reply that the law does allow anyone to prove exposure through the residuals, and the Secretary's position seemed to be close to asking for a presumption of non-exposure. And again, his example was digging up barrels where they were buried, which again, really is leaning towards direct exposure to the chemicals themselves. And I want to emphasize, and I cannot emphasize enough, that the law itself allows for exposure even after the last use. So we ask that the veteran at this court reverse the Veterans Court's definition of exposure and also find that the duty to assist was not met. Thank you. Any more questions? Thank you. Thank you both. The case is taken under submission. The court will stand in recess for five minutes.